[Civ. No. 19560. First Dist., Div. Two. July 19, 1961.]

TYLER HENRY SMITH II, Respondent, v. SIGMUND ARYWITZ, as Labor Commissioner, Appellant.

Samuel S. Berman, Leon E. Gold and Pauline Nightingale for Appellant.

Tyler Henry Smith II, in pro. per., and Metoyer & Sweeney for Respondent.

SHOEMAKER, J.—This is an appeal by the Labor Commissioner of the State of California from a judgment in favor of plaintiff Tyler Henry Smith, II, operator of an employment agency, in an action for declaratory relief.

Plaintiff brought this action to have it declared that he had the right in the operation of his agency to use the Bank of America charge account plan, and in particular that the court declare that it was proper to accept from the applicants for whom he secured employment a "sales draft" as a medium of payment for the agency's services, the Labor Commissioner having taken the position that the "sales draft" was not only subject to his approval before it could be used in the business, but also contrary to certain rules then in force for the regulation of employment agencies. The court's judgment sanctioned the use of the "sales draft" without prior approval by the commissioner.

 The sole question on this appeal is whether the "sales draft" admittedly used by the plaintiff must have the approval of the Labor Commissioner.

Appellant contends that the trial court failed to properly interpret the relevant Labor Code sections and the various documents comprising the Bank of America charge account plan. Respondent, on the other hand, argues that subdivision (i) of section 1624, Labor Code, applies only to terms, conditions or understandings "agreed upon between the agency and the applicant." It is respondent's position that the Bank of America plan is not a contract between the applicant and the agency, but consists of two separate contracts, (1) that between the applicant and the bank, and (2) that between the agency and the bank; and that under these circumstances section 1624 does not apply and there is no need for the approval of the appellant pursuant to section 1628, Labor Code. Adopting this argument, the trial court entered its judgment.

Labor Code, section 1624, states that " [e]very employment agency shall give to every applicant for employment from whom a fee is to be received a contract or receipt, in which is stated . . ." the name and address of the agency, the pros-

pective employer, and the applicant; the amount of fee to be charged the applicant; the kind of work; the daily hours of work; whether the work be temporary or permanent; whether labor trouble exists at the place of employment; and "(i) Any other term, condition or understanding agreed upon between the agency and the applicant." Labor Code, section 1628, provides that "[t]he blank forms of contracts and receipts used by employment agencies shall be uniform and be approved by the Labor Commissioner." In this cause respondent had entered into contracts with his job applicants on the form approved by the Labor Commissioner. The fee charged was set forth in this approved contract and was in accordance with respondent's fee schedule which was on file with the Labor Commissioner. At this point, if the applicant already had a Bankamericard or desired to apply for one, and wished to use this method of payment, respondent would then supply the applicant with the "sales draft" and the same would be completed wherein the applicant is designated "purchaser-acceptor," the bank is payee, and respondent is the drawer. Thereafter, in accordance with the agreement with the bank, respondent presented the "sales draft" to the bank and received 94 per cent of its value. Respondent asserts that this is nothing more or less than a loan procedure on the part of the applicant, and that he has no connection with the transaction other than accepting the cash tendered by the applicant. However, an examination of the "sales draft" shows that respondent's position in the transaction is far more than a mere recipient of funds obtained by way of a loan. He signs the "sales draft" as drawer. Further, by the very nature of the "sales draft" there is a representation by the drawer that the "purchaser-acceptor" is indebted to the drawer in the amount of the draft. Also, by signing the draft the drawer is contracting that the "purchaser-acceptor" shall pay this amount to the payee bank. The effect of the instrument is that the drawer is transferring a debt owed him to the payee, and the "purchaser-acceptor," by signing the draft and thus accepting it, acknowledges the debt it represents and makes an absolute promise to pay it to the payee. (See Daniel, Negotiable Instruments [7th ed.], vol. 1, § 19, p. 17; Britton, Bills and Notes, § 92, p. 361; Brannan, Negotiable Instruments Law [6th ed.], §§ 61, 62, pp. 755, 760; Civ. Code, §§ 3142, 3143.)

Under this procedure it cannot be claimed that respondent stands aloof from the transaction and that the "sales draft"

is solely a contract between the applicant and the bank. This is particularly so for under this plan respondent becomes liable to the bank immediately a draft is dishonored. (Civ. Code, § 3142.) (For an analogous situation involving the use of a promissory note, see *ABC Acceptance* v. *Delby* (1957), 150 Cal.App.2d Supp. 826 [310 P.2d 712].)

In our opinion, the "sales draft" does constitute an additional "term, condition, or understanding" between the applicant and the agency under the provisions of section 1624, and section 1628 applies.

In view of this conclusion, it is unnecessary to discuss appellant's contention that the respondent, by the use of "sales drafts," was circumventing the requirements of Labor Code, section 1647.

The judgment is reversed, with directions to the trial court to enter its judgment that respondent submit the Bank of America plan, and the documents required thereunder as applied to respondent's business as a licensed employment agency of this state, to appellant for approval and to discontinue the use of said plan until such approval be obtained.

Kaufman, P. J., and Draper, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 13, 1961.